ANNIE M. MITCHELL *vs.* JEREMIAH J. MITCHELL.

Norfolk.     April 9, 10, 1942. — September 8, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Probate Court*, Vacation of decree, Findings by judge. *Marriage and Divorce*, Insanity of libellee, Vacation of decree. *Insanity.*

After a hearing of a divorce libel by a judge fully informed as to the libellee's mental condition, the entry of a decree nisi without a guardian ad litem having been appointed for the libellee under G. L. (Ter. Ed.) c. 208, § 15, imported a finding that the libellee was not insane during the pendency of the libel.

Whether or not the libellee had a meritorious defence to a libel for divorce, there was no error in the denial of a petition to vacate a decree nisi entered after an uncontested hearing and without a guardian ad litem for the libellee having been appointed under G. L. (Ter. Ed.) c. 208, § 15, where it appeared that the libellee had been fully informed by his attorney concerning the steps taken in the divorce proceeding and understood his rights, and that the judge hearing the libel must have found that the libellee was not insane during the pendency thereof, although another judge hearing the petition to vacate found that the libellee was insane at intervals during the pendency of the libel.

PETITION to vacate, filed in the Probate Court for the county of Norfolk on March 19, 1941.

The case was heard by *Reynolds*, J., who qualified as a judge of that court on October 24, 1940.

*W. J. Geegan,* (*L. J. Rouleau* with him,) for the petitioner.

*E. M. Dangel,* (*L. E. Sherry* & *H. Pavan* with him,) for the respondent.

Cox, J.  This is a petition brought in the Probate Court to vacate a decree of divorce nisi entered in that court which became absolute.  There is a report of material facts. (G. L. [Ter. Ed.] c. 215, § 11.)  The petitioner appealed from the decree dismissing her petition.

The respondent, on October 26, 1937, filed a libel for divorce against the petitioner.  Personal service of the libel was made on the libellee on December 27, 1937.  A general appearance was filed for her on January 19, 1938,

and, through her counsel, she filed an answer to the libel and a motion for specifications on January 22, 1938.

In August, 1936, upon the respondent's application to a judge of a District Court, the petitioner was committed for observation to an institution for the insane. Under date of September 21, 1936, "in compliance with the order of commitment, and pursuant to the provisions" of G. L. (Ter. Ed.) c. 123, § 77, an "Assistant Superintendent" of the hospital made a written report of the petitioner's mental condition, stating, among other things, that, in his opinion, she was insane, and on September 23, 1936, the judge of the District Court, after hearing, committed the petitioner subject to the provisions of said § 77. From the records of the hospital, it appears that on four different occasions the petitioner was released "on visit." The second visit extended from July 19, 1937, to February 26, 1938, when she was returned to the hospital, where she remained until July 27, 1938. She was "on visit" from this last date until October 15, 1938. From this it appears that the petitioner was "on visit" when the libel was filed, service made, and appearance and answer filed. It does not appear when the libel was heard, but a decree nisi was entered on April 20, 1938, and this decree became absolute on October 21, 1938. On both of these dates the petitioner was confined in the hospital, although she was "on visit" from July 27, 1938, to October 15, 1938.

The petitioner's counsel was appointed her guardian on March 9, 1938, on a petition alleging her to be a spendthrift. (See *Mitchell* v. *Mitchell, ante,* 154.) He investigated all facts in connection with the libel, acted in good faith, and could find no defence to offer. He fully informed the petitioner as to every step that was taken, and she was fully informed as to the decree that was entered. She understood the significance of the legal proceedings and knew what her rights were therein. During one of the conferences with her attorney, she discussed with him the advisability of permitting the divorce "to go uncontested," provided she could obtain the respondent's release of curtesy in the real property standing in her name.

At the uncontested hearing on the libel the libellant's counsel informed the judge of the mental condition of the libellee and of her confinement in the hospital. The judge knew at that time that the libellee had been adjudicated a spendthrift and that her attorney had been appointed her guardian. The court did not appoint a guardian under G. L. (Ter. Ed.) c. 208, § 15, and no other guardian or guardian ad litem had been appointed for the libellee. Neither the libellant nor his counsel concealed any fact from the court. In the case at bar no testimony was offered by the petitioner to indicate that she had an adequate defence to the merits of the libel.

In the case at bar the judge found that the petitioner's mental disturbance occurred only after the excessive consumption of alcohol; that when alcohol was eliminated from her diet she became normal; and that her return to the hospital after four extended visits was, in each instance, due to the excessive drinking of alcoholic liquor. He also found that while she was confined in the hospital, and during the pendency of the libel, there were periods when she was insane; that there were many periods when she was normal in all respects; and that she was insane from February 26, 1938, to March 5, 1938.

General Laws (Ter. Ed.) c. 208, § 15, provides, among other things, that if during the pendency of a libel the libellee is insane, the court shall appoint a suitable guardian to appear and answer in like manner as a guardian for an infant defendant in an action at law may be appointed. The libel was pending from the time that it was entered in court until the entry of the decree absolute. *Browne* v. *Browne*, 215 Mass. 76, 79. *Mulligan* v. *Hilton*, 305 Mass. 5, 8. The provisions of said § 15 required the court to determine judicially the fact of the insanity of the libellee as a condition precedent to the exercise of the authority to appoint a guardian ad litem. *Little* v. *Little*, 13 Gray, 264, 266. See *Mansfield* v. *Mansfield*, 13 Mass. 412; *Pratt* v. *Bates*, 161 Mass. 315, 319; *Neafsey* v. *Chincholo*, 225 Mass. 12, 15, 16.

"Whether a person is insane at a given time is mainly a

question of fact 'upon which courts have been increasingly unwilling to lay down sweeping rules.'" *Woodworth* v. *Woodworth*, 273 Mass. 402, 408. In the divorce proceedings one question was whether the libellee was insane during the pendency of the libel, and this was a question of fact to be determined upon all the evidence. The commitment of the petitioner to the hospital settled nothing finally or conclusively against her. It did not take from her the control of her property. It was not equivalent to the appointment of a guardian over her. See *Simoneau* v. *O'Brien*, 311 Mass. 68, 73–74. She was entitled as a matter of right to institute proceedings under the statute to determine the necessity and propriety of her confinement. *Leggate* v. *Clark*, 111 Mass. 308, 309. *Dowdell, petitioner*, 169 Mass. 387, 388. *Commonwealth* v. *Bird*, 264 Mass. 485, 487–488. The judge who heard the divorce libel was informed of the libellee's mental condition and of her confinement in the hospital. It was for him to determine whether during the pendency of the libel the libellee was insane. No guardian ad litem was appointed.

Probate Courts have jurisdiction of libels for divorce. G. L. (Ter. Ed.) c. 215, §§ 3 and 6. In the divorce case the court acquired jurisdiction over the person of the libellee as the result of the appearance and answer. *Hersey* v. *Hersey*, 271 Mass. 545, 548. The power and jurisdiction of the court in granting divorces are entirely statutory, *Wallace* v. *Wallace*, 273 Mass. 62, 63, and the procedure in general accords with equity practice. *Drew* v. *Drew*, 250 Mass. 41, 43. *Woodworth* v. *Woodworth*, 273 Mass. 402, 406. See *Field* v. *Field*, 264 Mass. 549. The entry of the decree imports a finding of all facts favorable to the libellant under the pleadings, *Novick* v. *Novick*, 299 Mass. 15, and it is a general rule in equity that a cause fully heard on its merits ought to be decided by a decree that settles for all time the issues involved. *Field* v. *Field*, 264 Mass. 549, 550. The record in the case at bar discloses no facts other than those already recited as to what took place at any hearings before the judge who granted the divorce. It is true that it appears that he knew that the petitioner had been

adjudicated a spendthrift, and that a guardian had been appointed, and also that her attorney in the divorce proceeding had been appointed her guardian. General Laws (Ter. Ed.) c. 201, § 8, provides, among other things, that a person appointed guardian of a spendthrift is guardian of his person and estate, and it may be contended that in the circumstances, assuming that the appointment of the guardian of the petitioner as a spendthrift was valid (see *Mitchell* v. *Mitchell, ante,* 154), there was no occasion for the judge to appoint a guardian ad litem. See *Garnett* v. *Garnett,* 114 Mass. 379. But it is to be observed that the purpose of § 15 of said c. 208 is that a suitable guardian is to appear and answer in the divorce proceedings. The record in the case at bar, however, discloses that in the divorce proceedings the libellee's attorney filed a general appearance for her and that, through him, she filed an answer to the libel and a motion for specifications. Nowhere does it appear that any guardian, as such, of the libellee appeared and answered for her. We think it follows from this record that the judge who heard the divorce case determined, as was his duty, that there was no occasion for the appointment of a guardian ad litem, for the reason that the libellee was not insane during the pendency of the libel. It is true that in the case at bar the judge found that during the pendency of the libel there were periods when the libellee was insane and that she was insane from February 26, 1938, to March 5, 1938. This is his determination of the facts as presented to him. The judge who heard the divorce case was required to make a determination of the fact as to the insanity of the libellee upon the evidence that he heard. *Anagnostopoulos* v. *Anagnostopoulos,* 307 Mass. 493. In *Zeitlin* v. *Zeitlin,* 202 Mass. 205, 207, it was said: "It is in the interests of justice that, after a trial and final judgment in a case, the matters heard and adjudicated shall not be opened for a further hearing because of a supposed error in the determination of facts by the tribunal that heard the evidence." Some of the reasons why a decree for divorce should not be set aside are pointed out in *Greene* v. *Greene,* 2 Gray, 361. See *Chapman* v. *Chap-*

*man*, 224 Mass. 427, 434.  The decision of the judge who heard the divorce case on a question of fact should stand even if some other judge, upon evidence heard by him, decides that question differently.  See *Copeland* v. *Wheelwright*, 230 Mass. 131, 138; *Burgess* v. *Burgess*, 256 Mass. 99; *Sullivan* v. *Sullivan*, 266 Mass. 228, 229.  Compare *Institution for Savings in Newburyport, petitioner*, 309 Mass. 12, 15.

No testimony was offered by the petitioner in the case at bar to indicate that she had an adequate defence to the merits of the libel.  Where, as here, the Probate Court has jurisdiction of the subject matter and of the parties, and where it cannot be said that there was any error, it is unnecessary to determine whether the failure of the petitioner to disclose that she had a meritorious defence to the libel is an additional reason why the petition should not be granted.  See *Lovell* v. *Lovell*, 276 Mass. 10;  *Woods* v. *Woods*, 290 Mass. 392.  Compare *Sullivan* v. *Sullivan*, 266 Mass. 228, 229.

This opinion is that of a majority of the court.

*Decree affirmed.*